UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| KATRINA LACERTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CAFÉ SERVICES, INC., | ) | |
| | ) | |
| Defendant | ) | |

**COMPLAINT**
**JURY TRIAL REQUESTED**
**INJUNCTIVE RELIEF REQUESTED**

NOW COMES the Plaintiff, Katrina Lacerte, ("Plaintiff" or "Lacerte"), by and through undersigned counsel, and complains against the Defendant, Café Services, Inc. ("CS" or "Defendant"), as follows:

## INTRODUCTION

1. This action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and New Hampshire's Law Against Discrimination, RSA 354-A, *et seq.* ("354-A").

2. Defendant discriminated against Plaintiff because of her disability, failed to provide Plaintiff with reasonable accommodation, and retaliated against her for requesting and needing a reasonable accommodation and Family Medical Leave, in direct violation of the New Hampshire Law Against Discrimination, the FMLA, and the ADA.

## PARTIES

3. Lacerte is a United States citizen residing in Manchester, New Hampshire.

4. Café Services, Inc. is a family-owned food service management organization that delivers food service management programs to over 200 client facilities throughout New England and the mid-Atlantic.

5. Defendant serves businesses, schools, summer camps, senior living facilities, rehab centers, and skilled nursing residences through its three divisions: Café Services, Fresh Picks Café School Division, and Glendale Dining Services.

6. Defendant is headquartered at 15 Dartmouth Dr., Unit 201, Auburn, NH 03032.

7. At all relevant times, Lacerte was employed by Defendant.

## JURY TRIAL DEMAND

8. Plaintiff requests a trial by jury on all issues triable to a jury.

## JURISDICTION

9. The amount in controversy in this matter exceeds $75,000.

10. This Court has subject matter jurisdiction over Lacerte's state and federal claims under 28 U.S.C. §§ 1331 and 1367.

## FACTUAL ALLEGATIONS

### Employment Background

11. On or around November 10, 2021, the Defendant hired Lacerte as a Human Resource Business Partner.

12. She was responsible for providing strategic HR guidance and support to business leaders, aligning human resources initiatives with organizational goals to drive performance, engagement, and workforce development.

13. Throughout her two years of service, Lacerte maintained an exemplary employment record.

Medical Condition and Accommodation Requests

14.     Lacerte is a qualified individual with a disability.

15.     Lacerte has an autoimmune disorder that is still being diagnosed.

16.     Lacerte's disability is a serious medical condition that affects her joints and muscles, and requires her to engage in regular stretching, lying down, the use of ice packs or heating pads, and more.

17.     Plaintiff's condition substantially limited major life activities such as walking and sleeping.

18.     Plaintiff's condition is and was a disability for the purposes of the ADA and RSA 354-A.

19.     On or around December 29, 2022, Plaintiff requested a day off due to her disabilities.

20.     Defendant approved the day off, stating there was "no need to panic".

21.     On or around December 30, 2022, Lacerte woke up around 5:00 AM with extreme pain and went to Elliot Urgent Care.

22.     The physicians at Elliot Urgent Care believed it to be a viral condition and suggested that Lacerte follow up with her doctors the following week.

23.     Lacerte continued to have severe symptoms over the weekend, and so she communicated to the Defendant that she would need to miss work again on Wednesday, January 4, 2023.

24.     As her symptoms persisted, Lacerte requested permission to work remotely for the remainder of the week.

25. Lacerte's request to work remotely for the remainder of the week was a request for a reasonable accommodation under the ADA and RSA 354-A.

26. Unfortunately, despite the request being reasonable and posing no undue burden on the Defendant, Lacerte was informed that her request was denied.

Defendant's Response and Interactive Process

27. On January 5, 2023, Lacerte was told that she needed to report to the office.

28. At approximately 10:00 AM on January 5, 2023, Lacerte's boss, Jamie Matheson ("Matheson"), arrived at the office and saw that Lacerte was visibly uncomfortable and ill.

29. Matheson told Lacerte to go home.

30. On or around January 13, 2023, Lacerte disclosed to Matheson the extent of her medical condition and requested additional support.

31. Matheson responded by asking Lacerte about her specific symptoms.

32. When Lacerte indicated that insomnia was one of her many symptoms, Matheson said there was "nothing they could do" about that.

33. On or around January 20, 2023, Lacerte had a follow-up appointment with her medical provider.

34. Lacerte's medical provider produced a doctor's note that clearly indicated Lacerte would need to work remotely up to three days per week.

35. On Sunday, January 22, 2023, Lacerte had a family emergency and asked to work remotely for the week.

36. Matheson stated that Lacerte could work remotely due to inclement weather on Monday, but that they would need to take the rest of the week "day-by-day".

37. On the afternoon of Monday, January 23, 2023, Matheson and Lacerte had a conversation.

38. During this conversation, Matheson clearly indicated that Lacerte could not continue working remotely.

39. Lacerte said that she understood and requested to take Tuesday off work entirely.

40. On Wednesday, January 25, 2023, Lacerte asked to speak with Ms. Matheson in person.

41. During this conversation, Lacerte disclosed additional information about her family emergency and ongoing medical conditions.

42. Lacerte provided Matheson with a copy of the doctor's note that indicated she would need to work remotely up to three days per week.

43. This request for a hybrid schedule was another request for reasonable accommodation under the applicable laws.

44. Matheson stated that the Defendant was not a "remote company", so she could not agree to the request.

45. Matheson stated that if Lacerte "truly needed" an accommodation, that she would need to file formal ADA paperwork.

46. Matheson's comments were offensive and discriminatory on the basis of Lacerte's disability.

47. Lacerte's previous requests were already requests for accommodation under the applicable laws.

48. Matheson's comments indicated that she did not believe Lacerte was "truly" disabled or "truly" needed accommodations, despite the clear medical direction that had already been provided by Lacerte's physician.

49. Nonetheless, Lacerte continued to engage in an interactive process.

Family Medical Leave and Termination

50. Lacerte saw her provider on January 26, 2023.

51. Lacerte's provider determined that, as a direct result of the Defendant's unwillingness to accommodate a hybrid schedule, Lacerte would need to go on continuous leave to improve her symptoms.

52. After her appointment, Lacerte reached out to Matheson to inform her that her healthcare provider had determined that she would need a medical leave of absence, effective immediately.

53. This request for medical leave was a request for continuous job-protected leave under the Family Medical Leave Act.

54. Defendant employed more than 50 employees within a 75-mile radius.

55. Lacerte had worked more than 1250 hours in the last 12 months.

56. Lacerte was eligible for and entitled to Family Medical Leave.

57. Matheson responded to Lacerte via email, indicating that she was "shocked" that a leave of this nature was needed.

58. Lacerte's physician filled out FMLA paperwork, and the Defendant eventually approved the leave.

59. Once Lacerte's leave began, Matheson stopped replying to emails from Lacerte.

60. Matheson emailed Lacerte only once, on Sunday, May 5, 2023, looking to "check in".

61. Lacerte responded by informing Matheson that she was having issues, particularly related to short-term disability.

62. Lacerte indicated that she was looking for support.

63. Matheson ignored the email.

64. On March 21, 2023, Lacerte reached out to a different HR Business Partner for answers regarding the denial of her short-term disability benefits.

65. On or around April 20, 2023, Lacerte emailed Matheson to inform her that she was expecting to return to work the following week, as her FMLA paperwork had previously indicated.

66. Lacerte also stated that she may be submitting additional requests for accommodation upon her return.

67. On April 21, 2023, Matheson responded by informing Lacerte that her FMLA-protected leave had expired the day before, and that her position was being eliminated, effective April 21, 2023.

68. Lacerte was shocked by this information.

69. Lacerte accurately believed that her request for leave was job-protected under the FMLA.

Lack of Legitimate Business Justification

70. On or around September 2, 2023, Plaintiff filed an administrative charge with the New Hampshire Commission for Human Rights ("NHCHR"), alleging disability discrimination and retaliation.

71. In Defendant's November 3, 2023, response to Plaintiff's charge, Defendant indicated that, "During [the time that Plaintiff was on FMLA], [the] Employer began discussing downsizing due to decreased administrative business demands."

72. Defendant stated that, "... [while] Complainant was on leave, a single employee at Employer was able to absorb all of Complainant's job duties along with their own, demonstrating the lack of need for Complainant's position."

73. Defendant concluded that, "After reviewing employee workloads and business demands, it was decided that one position in the accounting department would be terminated in addition to the HR Business Partner position held by the Complainant. Because Complainant was on leave when the decision was made, Employer decided to delay notifying Complainant and kept her on as an employee."

74. Defendant said they kept Plaintiff employed, "... in order to provide Complainant continued benefits while she was on leave."

75. Lacerte's Short Term Disability had been denied, so it was unclear what "benefits" the Defendant was referring to.

76. During the NHCHR's investigation, the Commission asked for evidence that the Defendant had a legitimate business need to downsize and prompted the Defendant to explain what benefits they were referring to in relation to the decision to keep Plaintiff employed while on leave.

77. Defendant was unwilling or unable to provide any information or documentation evidencing a response to either request.

78. Defendant claims that they provided correspondence between Jamie Matheson and the company's counsel discussing the elimination of Lacerte's position before Lacerte made any request for accommodation.

79. The correspondence in question is an email dated April 20, 2023, that occurred long after Lacerte's numerous and varied requests for leave and accommodations.

80. The only thing that this email evidences is that Matheson was instructed to inform Lacerte that she was being terminated one day after her FMLA expired.

81. The fact that Defendant waited until the expiration of Lacerte's FMLA indicates that the company was concerned about terminating an employee who was on Family Medical Leave.

82. The fact that the stated reason for Plaintiff's termination directly acknowledges and relates to a request for FMLA is clear and convincing evidence that Plaintiff would not have been terminated but for her need for leave.

83. Defendant violated Plaintiff's rights under the FMLA by making the decision to terminate her employment while on protected medical leave, for reasons directly related to her need for leave.

84. Even if Defendant could show that there was a legitimate business need for downsizing, there is no explanation for why the Plaintiff's position was selected for elimination, other than the fact that she required and was on FMLA-protected leave.

85. The probative timing evidences that Lacerte's termination was an act of retaliation for her request for reasonable accommodations and protected family medical leave.

86. It would have been reasonable for the Defendant to allow the Plaintiff to work remotely three days a week back in January of 2023.

87. Alternatively, it would have been reasonable for the Defendant to work with the Plaintiff to find alternative accommodations that would have allowed Plaintiff to continue performing the essential functions of her role.

88. Defendant's failure to engage in an interactive process constituted a violation of the Defendant's legal obligations under the ADA and RSA 354-A, which ultimately led to a failure to accommodate.

89. When Defendant failed to accommodate Plaintiff, it was only then that she was forced to request medical leave under the FMLA.

90. A failure to accommodate claim does not require a showing of unlawful intent or animus, rather, if an employer denies a qualified employee with a disability a reasonable accommodation then they are liable under state and federal law.

91. Where the Defendant has seemingly admitted that Plaintiff would not have been terminated but for her request for FMLA, they have also established a causal connection between Plaintiff's termination and her prior requests for accommodations.

92. The Defendant terminated Plaintiff because she requested and required accommodations due to her disability in violation of the ADA and RSA 354-A.

93. Where Plaintiff was terminated in connection with her disability, her termination also constitutes unlawful disability discrimination. *Criado v. IBM Corp.*, 145 F.3d 437, 444–45 (1st Cir. 1998).

94. It is clear that the Defendant's managers regarded Lacerte as a person with a physical impairment and a disability and considered her a less valuable and less capable employee because of her impairment.

95. Plaintiff suffered substantial economic losses as a result of Defendant's discrimination and retaliation and continues to do so.

96. Defendant's discrimination and retaliation has caused Plaintiff substantial stress, anxiety, and humiliation and other non-economic damages.

97. Defendant knowingly violated Plaintiff's state and federal rights and/or violated Plaintiff's rights with reckless indifference and so is liable for punitive damages.

**COUNT I: ADA - DISABILITY DISCRIMINATION**

98. Paragraphs 1-97 are incorporated by reference.

99. Defendant's conduct violates the ADA's prohibition against disability discrimination.

**COUNT II: ADA – FAILURE TO ACCOMMODATE**

100. Paragraphs 1-99 are incorporated by reference.

101. Defendant failed to provide Plaintiff with reasonable accommodation in violation of the ADA.

**COUNT III: ADA - RETALIATION**

102. Paragraphs 1-101 are incorporated by reference.

103. Defendant engaged in unlawful retaliation against the Plaintiff in violation of the ADA.

**COUNT IV: RSA 354-A – DISABILITY DISCRIMINATION**

104. Paragraphs 1-103 are incorporated by reference.

105. Defendant's conduct violates RSA 354-A's prohibition against disability discrimination.

**COUNT V: RSA 354-A – FAILURE TO ACCOMMODATE**

106. Paragraphs 1-105 are incorporated by reference.

107. Defendant failed to provide Plaintiff with reasonable accommodation in violation of RSA 354-A.

**COUNT VI: RSA 354-A – RETALIATION**

108. Paragraphs 1-107 are incorporated by reference.

109. Defendant engaged in unlawful retaliation against Plaintiff in violation of 354-A.

**COUNT VII: FMLA – INTERFERENCE**

110. Paragraphs 1-109 are incorporated by reference.

111. Defendant's conduct violates the Family Medical Leave Act's prohibition against FMLA interference.

**COUNT VIII: FMLA – RETALITION**

112. Paragraphs 1-111 are incorporated by reference.

113. Defendant engaged in unlawful retaliation against Plaintiff in violation of the FMLA.

**COUNT IX: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

114. Paragraphs 1-113 are incorporated by reference.

115. At all relevant times, Plaintiff was employed by Defendant as a Human Resource Business Partner.

116. New Hampshire generally follows the doctrine of employment at will, but recognizes an exception where the termination of an employee contravenes public policy. *Monge v. Beebe Rubber Co.*, 114 N.H. 130 (1974); *Cloutier v. Great Atlantic & Pacific Tea Co.*, 121 N.H. 915 (1981).

117. Plaintiff's termination violated New Hampshire's public policy favoring the protection of individuals who are disabled, the provision of reasonable accommodations to qualified employees with disabilities, and the right of employees to take medical leave to care for their own serious health conditions.

118. These public policies are codified in, but not limited to, the ADA (42 U.S.C. § 12101 *et seq.*), the FMLA (29 U.S.C. § 2601 *et seq.*), and the NHLAD (RSA 354-A).

119. Plaintiff was terminated because she requested and required reasonable accommodations related to her disability, engaged in protected medical leave, and exercised rights secured by the above-referenced laws.

120. Defendant's actions in terminating Plaintiff for exercising her statutory rights contravene the clear public policy of the State of New Hampshire and constitute wrongful termination.

121. As a direct and proximate result of Defendant's wrongful termination of Plaintiff, Plaintiff has suffered economic damages, including lost wages and benefits, as well as emotional distress and other compensable harms.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by the Defendant to be in violation of her rights;

B. Enjoin Defendant, their agents, successors, employees, and those acting in concert with them from continuing to violate her rights;

C. Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by the Defendant's violations of her rights;

E. Award equitable relief for back pay, lost benefits, and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award enhanced compensatory damages in an amount to be determined at trial;

I. Award nominal damages;

J. Award attorney's fees, including legal expenses, and costs;

K. Award prejudgment interest;

L. Permanently enjoin Defendant from engaging in any employment practices which violate the laws that were violated in this case;

M. Require the Defendant's CEO to mail letters to all employees notifying them of the verdict against them and stating that the Defendant will not tolerate discrimination or retaliation in the future;

N. Require that the Defendant post a notice in all of their workplaces of the verdict and a copy of the Court's order for injunctive relief;

O. Require that the Defendant train all management-level employees on the protections afforded by the laws that they violated in this case;

P. Require that the Defendant place documents in Plaintiff's personnel file which explain that they unlawfully retaliated against her; and

Q. Grant to Plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 23, 2025

/s/ Martin P. Tartre
Martin P. Tartre, NH Bar #276469
EMPLOYEE RIGHTS GROUP

92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343
martin@EmployeeRightsLaw.Attorney

Date: July 23, 2025

/s/ Chad T. Hansen
Chad T. Hansen, NH Bar #269340
EMPLOYEE RIGHTS GROUP
92 Exchange Street, 2nd Floor
Portland, ME 04101
Tel. (207) 874-0905
Fax (207) 874-0343
chad@employeerightslaw.attorney